UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TYSON POULOS,

                          Plaintiff,

v.                                                                                           9:18-CV-1279
                                                                                                   (GTS/ML)

ANTHONY J. ANNUCCI; CHRISTOPHER MILLER;
STEVEN GRIMALDI; AARON GORDON; MARK
ROSS, SR.; JARED LACHANCE; RONALD
HANSON; MICHAEL LYONS, JR.; DANIEL
REYNOLDS; REBECCA BRUNELLE; and JOHN
DOES 1-13,

                          Defendants.
_____

APPEARANCES:                                                                OF COUNSEL:

HELD & HINES LLP                                            PHILIP M. HINES, ESQ.
  Counsel for Plaintiff
2004 Ralph Avenue
Brooklyn, NY 11234

SALLAWAY LAW FIRM PLLC                          GEORGE H. SALLAWAY, ESQ.
  Co-Counsel for Plaintiff
P.O. Box 65
Fayetteville, NY 13066

HON. LETITIA A. JAMES                                HELENA LYNCH, ESQ.
Attorney General for the State of New York           Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this prisoner civil rights action filed by Tyson Poulos

("Plaintiff") against the 23 above-captioned employees of the New York State Department of

Corrections ("Defendants"), are (1) Defendants Annucci and Miller's motion to dismiss Plaintiff's Amended Complaint against them for failure to state a claim upon which relief can be granted, and (2) Plaintiff's request to amend the Amended Complaint if the Court grants Defendants' motion. (Dkt. No. 18.) For the reasons set forth below, Defendants Annucci and Miller's motion is granted and Plaintiff's request to amend the Amended Complaint is denied without prejudice.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff asserts four claims. (Dkt. No. 6 [Pl.'s Am. Compl.].) First, Plaintiff asserts a claim of excessive force and failure to intervene in violation of the Eighth Amendment against Defendants Grimaldi, Ross, Lachance, Hanson, Gordon, Lyons, Reynolds, and the John Doe Defendants based on an incident that occurred on November 11, 2015, in which Plaintiff alleges the relevant Defendants physically assaulted him, causing physical and mental injuries. (*Id.* at ¶¶ 95-100.)

Second, Plaintiff asserts a claim of conspiracy to violate his constitutional rights and to conceal violations of his constitutional rights pursuant to 42 U.S.C. § 1983 against Defendants Grimaldi, Ross, Lachance, Hanson, Gordon, Lyons, Reynolds, Brunelle, and the John Doe Defendants. (*Id.* at ¶¶ 101-09.)

Third, Plaintiff asserts a claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Defendant Brunelle based on the injuries he sustained as a result of the alleged assault on November 11, 2015. (*Id.* at ¶¶ 110-17.)

Fourth, Plaintiff asserts a claim of supervisory liability as to the above-described alleged

constitutional violations against Defendants Annucci and Miller. (*Id.* at ¶¶ 118-35.)

The Court notes that only the claim against Defendants Annucci and Miller is at issue on this motion to dismiss.

### B. Parties' Briefing on Defendants' Motion

#### 1. Defendants' Memorandum of Law

Generally, in their motion, Defendants Annucci and Miller assert two arguments. (Dkt. No. 18, Attach. 1, at 11-20 [Defs.' Mem. of Law].) First, Defendants Annucci and Miller argue that Plaintiff has failed to state claims of supervisory liability against them. (*Id.* at 11-18.) More specifically, Defendants Annucci and Miller argue that Plaintiff cannot show that they directly participated in the relevant incident, or that they failed to remedy the alleged violation, because it was a discrete incident that had already ended by the time they would have been made aware of it. (*Id.* at 12-13.) Defendants Annucci and Miller argue that Plaintiff also cannot show liability based on any of the other applicable forms of supervisory liability because his allegations are conclusory and without any supporting factual allegations; in particular, his citation to a statement by a former U.S. Attorney is not related to the alleged incident, and his citation to a 2006 report about conditions at Great Meadow Correctional Facility and to three lawsuits against various other corrections officer Defendants for separate incidents do not show that Defendants Annucci and Miller can be reasonably found to have been personally involved in the specific incident that Plaintiff alleges. (*Id.* at 13-18.)

Second, Defendants Annucci and Miller argue that they are entitled to qualified immunity because there is no clearly established law indicating that they were required to be on notice of a risk of assault to Plaintiff, or that they were required to take any additional or different actions in

3

response to any such risk of assault. (*Id.* at 18-20.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' arguments, Plaintiff asserts four arguments. (Dkt. No. 23, Attach. 3, at 20-29 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that he has alleged facts plausibly suggesting that Defendants Annucci and Miller failed to protect him from a known and foreseeable harm in that they were aware of "an endemic culture of violence" at Great Meadow Correctional Facility that predated the relevant incident through the 2006 report, similar prior lawsuits and grievances, and letters from prisoners or their counsel. (*Id.* at 20-23.) More specifically, Plaintiff argues as follows: (a) these two Defendants' failure to investigate and remedy the conditions identified in the 2006 report is indicative of their deliberate indifference to the activities that occur inside their prisons; (b) their job duties show that they were required to address such problems; and (c) they were "deliberately indifferent to the safety of Plaintiff by inter alia allowing known abusive officers and unqualified nurses to be and remain on staff." (*Id.*)

Second, Plaintiff argues that he has alleged facts plausibly suggesting that Defendants Annucci and Miller were personally involved in the alleged violations. (*Id.* at 24-28.) More specifically, Plaintiff argues as follows: (1) these two Defendants were personally involved in the use of excessive force through their gross negligence in training and supervising their subordinates because they knew or reasonably should have known of a substantial risk of harm to Plaintiff for the reasons discussed above in relation to his first argument; (2) they were personally involved in the denial of medical care through (a) Defendant Annucci's receipt of Plaintiff's letter of December 11, 2015, enclosing all his grievances about the incident, his injuries, and his

medical treatment as well as a subsequent letter that was answered by another individual on Defendant Annucci's behalf, both of which plausibly suggest that Defendant Annucci was aware of the alleged violations but failed to remedy the lack of medical care, and (b) the fact that Defendant Miller, as Superintendent of Great Meadow, "would necessarily have been made aware" of the alleged violations through both his staff and the grievance process; and (3) they were personally involved in the conspiracy to cover up the constitutional violations through (a) the grievances that Plaintiff forwarded to Defendant Annucci that alleged denial of hygiene products and access to resources necessary to pursue his legal matters, and threats of retaliatory violence by corrections officers that indicate Defendant Annucci had knowledge of the corrections officers' efforts to suppress Plaintiff's ability to speak about the incident, and (b) the fact that Defendant Miller, as Superintendent, had authority over everything at Great Meadow Correctional Facility and thus reasonably should have known that there was an institutional atmosphere likely to produce such a cover up. (*Id.*)

Third, Plaintiff argues that Defendants Annucci and Miller are not entitled to qualified immunity at this stage of the action based on the factual allegations plausibly suggesting that they had knowledge of their subordinates' actions against Plaintiff. (*Id.* at 28.)

Fourth, Plaintiff requests that he be granted leave to amend the Amended Complaint if his claims are found to be inadequately pled. (*Id.* at 29.)

### 3. Defendants' Reply Memorandum of Law

Generally, in reply to Plaintiff's response, Defendants Annucci and Miller assert four arguments. (Dkt. No. 25, at 6-12 [Defs.' Reply Mem. of Law].) First, Defendants Annucci and Miller argue that Plaintiff has failed to show personal involvement because (a) Plaintiff himself

acknowledged that the 2006 report was based on conditions noted nine years before the relevant incident, (b) citation to Defendants Annucci and Miller's job descriptions do not plausibly suggest that they were personally involved and essentially amount to a generic (and legally inaccurate) statement that supervisors can be held liable merely by virtue of being a supervisor, and (c) the grievances Plaintiff filed related to the incident do not plausibly suggest that Defendants Annucci and Miller were personally involved in the incident. (*Id.* at 6-9.)

Second, Defendants Annucci and Miller argue that the Court should decline to consider exhibits submitted along with Plaintiff's opposition memorandum of law because they are extrinsic materials outside of the pleadings that are not subject to any of the recognized exceptions permitting consideration of such materials. (*Id.* at 10-11.)

Third, Defendants Annucci and Miller argue that they have demonstrated entitlement to qualified immunity as a matter of law, based on Plaintiff's factual allegations. (*Id.* at 11.)

Fourth, Defendants Annucci and Miller argue that Plaintiff is not entitled to amend his Amended Complaint given that he has already amended it once in this litigation and his request does not otherwise comply with N.D.N.Y. L.R. 7.1(a)(4). (*Id.* at 12.)

## II. GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[1]

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion

## III. ANALYSIS

### A. Whether the Amended Complaint Alleges Facts Plausibly Suggesting the Personal Involvement of Defendants Annucci and Miller

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 18, Attach. 1, at 11-18 [Defs.' Mem. of Law]; Dkt. No. 25, at 6-9 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

"An individual cannot be held liable for damages under [42 U.S.C.] § 1983 'merely because he held a high position of authority,' but can be held liable if he was personally involved in the alleged deprivation." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107,

---

to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

10

127 (2d Cir. 2004). To establish personal involvement, Plaintiff must show that Defendants Annucci and Miller meet one of the following criteria: (1) they directly participated in the violation, (2) they failed to remedy a wrong after being informed through a report or appeal, (3) they created a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) they engaged in grossly negligent supervision of subordinates who committed a violation, or (5) they exhibited deliberate indifference in failing to act on information that unconstitutional acts were occurring. *Brandon v. Kinter*, 938 F. 3d 21, 36-37 (2d Cir. 2019).

Here, it is clear that Plaintiff has not alleged facts plausibly suggesting that Defendants Annucci or Miller directly participated in either the assault or the denial of medical care, because there is no allegation that they were present during the assault or during the provision of medical care or were otherwise involved in the decisions made giving rise to those alleged violations.

As to Plaintiff's arguments that these Defendants were aware of the violation of his constitutional rights but failed to remedy it, the Court notes that the relevant awareness is limited to awareness of the actual violations and not of a general pattern of unconstitutional behavior (which is addressed by a different factor). The only allegations in the Amended Complaint related to these Defendants' knowledge is that (a) they were aware of a *pattern* of various abuses at Great Meadow Correctional Facility, (b) they failed to investigate allegations of constitutional violations, including those related to the incident on November 11, 2015, and (c) Plaintiff's counsel sent a letter to Defendant Annucci on July 21, 2016, detailing the assault and Plaintiff's

injuries.[2]  (Dkt. No. 6, at ¶¶ 87-88, 144 [Pl.'s Am. Compl.].)   The Amended Complaint therefore alleges no way in which Defendant Miller could have been aware of the alleged constitutional violations, and alleges only that Defendant Annucci was sent a single letter eight months after the assault.  Such allegations do not plausibly suggest that either of these Defendants was personally involved in the alleged violation by failing to remedy it after becoming aware of it.  *See Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (noting that courts generally find that merely writing a letter of complaint does not suffice to show personal involvement where the official merely receives a letter and passes it onto a subordinate for response or investigation); *accord Wingate v. Gives*, 05-CV-1872, 2009 WL 424359, at *7 n.4 (S.D.N.Y. Feb. 13, 2009); *see also Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged

---

[2]  The Court notes that Plaintiff has also discussed (in his opposition memorandum of law) the letter of December 11, 2015, that he sent to Defendant Annucci which enclosed all of his grievances related to the incident on November 11, 2015, his injuries, and the denial of medical care; however, Plaintiff did not include any allegations about this letter in the Amended Complaint.  (Dkt. No. 23, Attach. 3, at 25 [Pl.'s Opp'n Mem. of Law].)  For the sake of brevity, the Court will not linger on the fact that Plaintiff has no right to allege new facts in his opposition memorandum of law given that he is not proceeding *pro se.*  However, even if the Court were to consider this additional allegation (as part of Plaintiff's request for leave to amend the Amended Complaint, as will be discussed in greater detail in Part III.B. of this Decision and Order), Plaintiff has not alleged any facts, in the Amended Complaint or his opposition memorandum of law, to plausibly suggest that Defendant Annucci engaged in conduct that otherwise would merit holding him personally liable as a result of his receipt of that letter.  Specifically, Plaintiff acknowledges in his opposition memorandum of law that the Director of DOCCS' Inmate Grievance Program answered this letter on Defendant Annucci's behalf, in which she noted that Plaintiff's complaints had been forwarded to the Central Office Review Committee.  (Dkt. No. 23, Attach. 3, at 26 [Pl.'s Opp'n Mem. of Law].)  As already noted, such conduct does not suffice to plausibly suggest personal involvement.  *Rivera*, 655 F. Supp. 2d at 238; *Wingate v. Gives*, 2009 WL 424359, at *7 n.4; *Johnson*, 234 F. Supp. 2d at 363.

violations.") (citing cases).

The majority of Plaintiff's allegations center on the final three factors in that he alleges broadly that (a) it was well known that New York State Department of Corrections ("DOCCS") prisons, and particularly Great Meadow Correctional Facility, were rife with corrections officers committing constitutional violations, including the use of excessive force, against inmates, (b) Defendants Annucci and Miller were deliberately indifferent to the various occurrences and policies, customs, and practices of officers at Great Meadow Correctional Facility of violating inmates' constitutional rights, and (c) Defendants Annucci and Miller were aware of "officer-on-inmate" attacks, some of which involved the same corrections officer Defendants who were involved in the alleged assault on Plaintiff, by virtue of lawsuits filed against those corrections officer Defendants, but they failed to adequately train, supervise, or discipline those individuals. (Dkt. No. 6, at ¶¶ 118-35 [Pl.'s Am. Compl.].)

However, the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendants Annucci and Miller were aware of any policy, custom, or pattern of unconstitutional conduct at Great Meadow Correctional Facility or that they otherwise acted with gross negligence or deliberate indifference in supervising subordinates or reacting to information that unconstitutional acts were occurring. *See Poe v. Leonard*, 282 F.3d 123, 140 n.14 (2d Cir. 2002) (defining gross negligence as the "kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk").

As to Plaintiff's citation to a remark by former U.S. Attorney Preet Bharara in September 2016 that "[e]xcessive force in prisons, we believe, has reached crisis proportions in New York,"

such statement–even if true–has little relevance to determining the issues in contention on this motion to dismiss. (Dkt. No. 6, at ¶ 121 [Pl.'s Am. Compl.].) In particular, Plaintiff offers no factual allegations plausibly tying this remark to Great Meadow Correctional Facility (as to Defendant Miller) or plausibly indicating how this remark shows sufficient knowledge by Defendant Annucci; for example, there are no allegations to plausibly suggest that the U.S. Attorney was specifically referring to Great Meadow Correctional Facility during the period in question, or that he discussed his concerns (or the factual bases for them) with Defendant Annucci. Without any elaborating factual allegations, this statement amounts to an isolated opinion that has no discernable plausible connection to the questions involved in this litigation.

As to Plaintiff's citation to the 2006 report prepared by the Correctional Association of New York ("CANY"), Plaintiff has failed to allege facts plausibly suggesting that this report provided Defendants Annucci and Miller with knowledge of any policy, custom, or risk of harm to Plaintiff. As Defendants Annucci and Miller argue, the Amended Complaint acknowledges that this report was based on a single visit to Great Meadow Correctional Facility on June 20, 2006, approximately nine years before the alleged assault on November 11, 2015 (although Plaintiff does allege that "these systematic deprivations went uncured through and including the November 11, 2015, incident and beyond," a conclusory statement that he does not support with further factual allegations). Plaintiff alleges that Defendants Annucci and Miller were both aware of, and had reviewed, the 2006 report without providing any factual allegations in support of that conclusory allegation. (Dkt. No. 6, at ¶ 130 [Pl.'s Am. Compl.].) Nor does Plaintiff allege any facts in support of his conclusory allegation that unconstitutional actions or conditions like the ones described in the 2006 report continued to occur after the 2006 report in such a way

to plausibly suggest notice of conditions at Great Meadow Correctional Facility approximately nine years later. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations and draw from them all reasonable inferences; but were are not required to credit conclusory allegations or legal conclusions couched as factual allegations."). Specifically, the Amended Complaint does not contain any factual allegations of similar incidents against either Plaintiff or other inmates, but relies only on generalities such as that there were "myriad senseless officer-on-inmate attacks" in the past and that there is an "entrenched culture of violence and deliberate indifference to medical needs" against inmates. (Dkt. No. 6, at ¶¶ 125-27 [Pl.'s Am. Compl.].) The Court notes also that, although Plaintiff cites three lawsuits against some of the corrections officer Defendants, only one of those lawsuits involves alleged conduct that occurred at Great Meadow Correctional Facility (the other two having allegedly occurred at Coxsackie Correctional Facility); consequently, citation to these past lawsuits does not plausibly suggest widespread instances of unconstitutional conduct at Great Meadow Correctional Facility (the subject of the 2006 report). Plaintiff therefore has not alleged facts plausibly suggesting that the 2006 report provided the required knowledge that unconstitutional acts were occurring at Great Meadow Correctional Facility, much less that Defendants Annucci and Miller acted with gross negligence or deliberate indifference to that knowledge.

Plaintiff also uses the 2006 report in an attempt to suggest that Defendants Annucci and Miller were deliberately indifferent to the violations alleged to have been revealed by that report because they did not implement the suggestions made in that report, such as the installation of video surveillance. (Dkt. No. 6, at ¶¶ 14[g], 127-28, 132 [Pl.'s Am. Compl.]; Dkt. No. 23,

15

Attach. 3, at 13 [Pl.'s Opp'n Mem. of Law].) However, failure to implement certain suggestions made by an outside non-governmental agency with no authority to direct prison policy does not, in and of itself, plausibly suggest gross negligence or deliberate indifference.[3]

As to Plaintiff's citation to three prior lawsuits (one involving Defendant Ross and two involving Defendant Grimaldi), the Court finds that three lawsuits (one of which, *Irrizarry v. Cocknard*, ended with a jury finding of no liability on the part of any defendant) do not suffice to provide notice to Defendants Annucci and Miller that there was a risk of harm to inmates from the corrections officer Defendants. Although courts within this Circuit have recognized that prior lawsuits are relevant for showing notice or a custom or practice, cases where motions to dismiss have been denied based in part on prior lawsuits have involved a much more significant number of lawsuits than the number alleged here. *See Edwards v. City of New York*, 14-CV-10058, 2015 WL 5052637, at *6 n.3 (S.D.N.Y. Aug. 27, 2015) (noting that the complaint included citations to 18 lawsuits filed between 1999 and 2011); *McCants v. City of Newburgh*, 14-CV-0556, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) (denying motion to dismiss where plaintiff cited 17 similar lawsuits); *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 738 (S.D.N.Y. 2012) (denying motion to dismiss where plaintiff cited over 15 instances of alleged prosecutorial misconduct). Additionally, even fairly significant numbers of lawsuits have been found, under certain conditions, to be insufficient to plausibly suggest personal involvement. *See Calderon v. City of New York*, 138 F. Supp. 3d 593, 612-13 (S.D.N.Y. 2015)

---

[3] The Court takes judicial notice of CANY's own statement that it is an "independent organization in New York with authority under state law to monitor prisons and report [its] findings to the legislature and the broader public." *Who We Are*, Correctional Association of New York (Nov. 5, 2019), https://www.correctionalassociation.org/about-cany.

(finding that generic allegations of 16 prior lawsuits were insufficient to establish a widespread custom or practice, or to plausibly suggest a failure to train or supervise where plaintiff failed to include any allegations about the municipality's response to those cited lawsuits); *Tieman v. City of Newburgh*, 13-CV-4178, 2015 WL 1379652, at *16-17 (S.D.N.Y. Mar. 26, 2015) (finding that citation to nine prior lawsuits was insufficient to establish a custom or policy). As a result, the Court finds that Plaintiff's citation to three prior lawsuits against two of the corrections officer Defendants in this case do no suffice to plausibly suggest either a custom or policy or that Defendants Annucci and Miller had knowledge of any unreasonable risk to Plaintiff that they subsequently disregarded.

Even taken together, as they must be, the totality of the allegations do not suffice to plausibly suggest that Defendants Annucci and Miller were aware or reasonably should have been aware of an unreasonable risk of harm to Plaintiff to which they acquiesced or otherwise failed to remedy. Additionally, the remainder of Plaintiff's allegations (e.g., that there was an entrenched culture of violence and deliberate indifference to serious medical needs towards prisoners, that all of the other Defendants had been involved in unspecified similar excessive force incidents before November 11, 2015, without providing any factual allegation that Defendants Annucci or Miller were aware of those incidents, that "myriad" senseless attacks on inmates by corrections officers have occurred at Great Meadow Correctional Facility without providing any factual allegations that Defendants Annucci and Miller were aware of such attacks, that they received unelaborated grievances and letters regarding staff misconduct and abuse, and that they failed to comply with the duties in their job descriptions) are too conclusory and unsupported by sufficient factual allegations to plausibly suggest personal involvement by

17

Defendants Annucci and Miller. *See Rodriguez v. City of New York*, 649 F. Supp. 2d 301, 308 (S.D.N.Y. 2009) (dismissing supervisory liability claim where the plaintiff had "not provided a shred of particularization for the conclusory allegations that DA Morgenthau 'repeatedly failed to make any meaningful investigation into charges of constitutional violations by its staff'").

For all of the above reasons, the Court finds that Plaintiff has not alleged facts plausibly suggesting that Defendants Annucci and Miller were personally involved in the conduct alleged.[4]

### B. Whether Plaintiff Should Be Granted Leave to Amend His Amended Complaint

After careful consideration, the Court answers this question in the negative, although the Court finds that the denial should be without prejudice.

The Second Circuit found in *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21 (2d Cir. 2017), that it was improper to deny the plaintiff leave to amend his complaint with prejudice in the same order in which it granted the defendants' motion to dismiss because such action essentially required the plaintiff to amend his complaint before he was notified of the deficiencies in his original complaint. *Cresci*, 693 F. App'x at 25. The Second Circuit explained that, by denying leave to replead with prejudice because a defendant has failed to submit a proposed amended complaint before learning what deficiencies in the original complaint that the Court might identify effectively deprives a plaintiff of a reasonable opportunity to seek leave to amend. *Id.* However, the case that *Cresci* relied on, *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160 (2d Cir. 2015), specifically noted that "[o]ur opinion today, of

---

[4] Because the Court finds that Plaintiff has failed to allege facts plausibly suggesting that Defendants Annucci and Miller were personally involved in the alleged unconstitutional conduct, the Court need not, and does not, address Defendants' arguments related to the doctrine of qualified immunity at this time.

course, leaves unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility." *Loreley*, 797 F.3d at 190; *see also F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (upholding a district court's finding that amendment would be futile in a situation where the plaintiff requested leave to amend in its opposition to the motion to dismiss in the event that the complaint was found to be insufficient because the plaintiff offered no clue how the defects identified could be cured through an amendment).

As discussed above, the Court has already considered multiple allegations that Plaintiff added in his opposition memorandum of law that were not included in the Amended Complaint and found that even those additional allegations do not suffice to plausibly state personal involvement as to Defendants Annucci and Miller. Consequently, an opportunity to amend to add allegations related to those facts raised in the opposition memorandum of law (such as those regarding the December 2015 letter to Defendant Annucci) is not required, because the Court has already found that such amendments would, by themselves, be futile.

Additionally, as to Defendant Miller, Plaintiff's opposition memorandum of law strongly suggests that Plaintiff will be unlikely to add any factual allegations that would cure the deficiencies identified in this Decision and Order. Notably, Plaintiff's arguments about Defendant Miller's involvement in the incident on November, 11, 2015, the denial of adequate medical care, and the conspiracy essentially amount to generic assertions that Defendant Miller should be held to have knowledge and liability based on the fact that he is the Superintendent of Great Meadow Correctional Facility. (Dkt. No. 23, Attach. 3, at 24-28 [Pl.'s Opp'n Mem. of Law].) Because the law is clear that a position of authority is not sufficient to justify the

imposition of supervisory liability on an individual, Plaintiff has not demonstrated convincingly that he could make any amendment as to the claim against Defendant Miller that would not be futile.

However, because the pleading defects identified above in Part III.A. of this Decision and Order are not clearly substantive, the Court is unable to conclude that an opportunity to amend would be futile. As a result, the Court denies Plaintiff's request to amend without prejudice to the filing of a proper motion to amend, supported by a proposed Second Amended Complaint as required by N.D.N.Y. L.R. 7.1(a)(4), within the deadline set in the action's Uniform Pretrial Scheduling Order (or thereafter upon a showing of good cause).

**ACCORDINGLY**, it is

**ORDERED** that Defendants Annucci and Miller's motion to dismiss (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's request to amend his Amended Complaint as to the issues raised by Defendants Annucci and Miller is **DENIED without prejudice** to renewal as specified above in this Decision and Order.

Dated: November 25, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge