UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TYSON POULOS,

                              Plaintiff,

v.                                                          9:18-CV-1279
                                                            (GTS/ML)

STEVEN GRIMALDI; "JOHN" GORDON; MARK
ROSS, SR.; JARED LACHANCE; RONALD HANSON;
MICHAEL LYONS, JR.; DANIEL REYNOLDS;
REBECCA BRUNELLE; and JOHN DOES 1-13,

                              Defendants.
_____

APPEARANCES:                        OF COUNSEL:

HELD & HINES LAW LLP                PHILIP M. HINES, ESQ.
   Counsel for Plaintiff
2004 Ralph Avenue
Brooklyn, NY 11234

LAW OFFICE OF JACK ANGELOU          JACK D. ANGELOU, ESQ.
   Co-Counsel for Plaintiff
145 Willis Avenue, 2nd Floor
Mineola, NY 11501

HON. LETITIA A. JAMES               CHRISTOPHER LIBERATI-CONTANT, ESQ.
Attorney General for New York       Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 14202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this prisoner civil rights action filed by Tyson Poulos

("Plaintiff") against Steven Grimaldi, "John" Gordon, Mark Ross, Sr., Jared Lachance, Ronald

Hanson, Michael Lyons, Jr., Daniel Reynolds, Rebecca Brunelle, and John Does 1-13

("Defendants"), is Defendants' motion for summary judgment.  (Dkt. No. 49.)  For the reasons

set forth below, Defendants' motion for summary judgment granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint alleges that on

approximately November 11, 2015, while in the custody of the Department of Corrections and

Community Supervision ("DOCCS") at the Great Meadow Correctional Facility ("Great

Meadow"), he was being escorted by Defendant Grimaldi into his cell when Defendant

Grimaldi, unprovoked, attacked him and repeatedly punched him in the face and head.  (*See

generally* Dkt. No. 6 [Plf.'s Am. Compl.].)   Plaintiff further alleges that Defendants Gordon,

Ross, Lachance, Hanson, Lyons, Reynolds, and John Does 1-13 joined Defendant Grimaldi

(together the "Officer Defendants") in attacking Plaintiff, repeatedly punching him, hitting him

with their batons, and kicking him with their boots.  (*Id.*)  Finally, Plaintiff alleges that

Defendant Brunelle performed a cursory physical examination of Plaintiff and then minimally

and inaccurately documented his complaints, injuries, and statements in furtherance of a cover-

up.  (*Id.*)

Generally, based on these allegations, the Amended Complaint asserts three claims: (1) a

claim that the Officer Defendants used excessive force against him in violation of the Eighth

Amendment; (2) a claim that all Defendants (including Defendant Brunelle) conspired to cover

up the alleged excessive force incident by submitting false and/or misleading reports and

statements to support fabricated allegations in violation of 42 U.S.C. § 1983; and (3) a claim that

Defendant Brunelle, acting under the color of law, was deliberately indifferent to Plaintiff's

serious medical condition following the assault in that she gave only a cursory, superficial, and fleeting visual check of Plaintiff when he was brought into the infirmary and that she failed to refer him for examination and treatment at a hospital, in violation of the Eighth Amendment. (*Id.*)[1]

**B.    Undisputed Material Facts**

Unless otherwise noted, the following facts were asserted and supported with accurate citations by Defendants' in their Statement of Material Facts and expressly admitted or denied without appropriate record citations by Plaintiff, in his response thereto. (*Compare* Dkt. No. 49, Attach. 2 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 54, Attach 2 [Plf.'s Rule 7.1 Resp.].)

1.    On November 11, 2015, Plaintiff was in the custody of DOCCS and temporarily incarcerated at Great Meadow where he was housed on E-Block. (Dkt. No. 49, Attach. 2 at ⁋ 1.) On that day, at Great Meadow, Defendant Grimaldi was escorting Plaintiff from E-Block to the draft room. (*Id.* at ⁋ 2.)

2.    Multiple officers were nearby Plaintiff as he was being escorted from E-Block. (*Id.* at ⁋⁋ 6, 8.)

3.    An altercation ensued during which Plaintiff was struck several times by the Officer Defendants.[2] (*Id.* at ⁋ 3; Dkt. No. 54, Attach. 2, at ⁋ 3.)

4.    After the use of force ended and Plaintiff was restrained, Defendants Lyons and

---

[1]     Plaintiff's Amended Complaint also asserted a claim that Acting Commissioner Anthony J. Annucci and Great Meadow Superintendent Christopher Miller were personally involved (as supervisors) in the constitutional violations alleged because they failed to properly handle inmate grievances through systematic deprivations, in violation of the Eighth Amendment. (Dkt. No. 6.) However, that claim was dismissed by the Court on November 25, 2019. (Dkt. No. 28.)

[2]     Plaintiff has sufficiently disputed that he instigated the altercation and struck the first blow, and how long the altercation lasted. (Dkt. No. 54, Attach. 2, at ⁋⁋ 3-9.)

Hanson escorted Plaintiff to the facility medical clinic.  (*Id.* at   10.)

5.      When Plaintiff arrived at the facility medical clinic, Defendant Brunelle

performed a use-of-force examination, documenting Plaintiff's injuries.  (*Id.* at

13.)  According to the use-of-force examination, Plaintiff complained of rib pain,

right leg pain, and facial pain.  (*Id*.)  Defendant Brunelle documented multiple

contusions to Plaintiff's face, head, and mouth, abrasions to his left second and

third knuckles, abrasions on his back, and swelling in his knee.  (*Id.*)  Defendant

Brunelle bandaged Plaintiff's knuckles and noted that he was alert and oriented to

time, place and person.  (*Id.*)

6.      The use-of-force examination was recorded by handheld camera operated by

Defendant Lachance, at the direction of Defendant Lyons.  (*Id.* at   11.)

7.      Defendant Brunelle consulted with Dr. Karandy, who directed that Plaintiff be

placed in an isolation cell for observation.  (*Id.* at   14.)

8.      After the use-of-force examination, Defendants Lyons and Hanson escorted

Plaintiff to the observation cell, with Defendant Lachance continuing to operate

the escort camera.  (*Id.* at   15.)

9.      On November 12, 2015, Plaintiff complained of pain and was transported to

Albany Medical Center for X-rays, which showed fractures to Plaintiff's 9, 10,

and 11 ribs.  (*Id.* at   16.)

10.     On or about November 13, 2013, Plaintiff received a prescription for Percocet.

(*Id.* at   17.)

11.     DOCCS inmate grievance process involves three steps: (1) the inmate must file a

4

complaint with the Inmate Grievance Resolution Committee ("IGRC") within 21 calendar days of an alleged incident at the facility where the inmate is housed, even if the alleged incident occurred at another facility; (2) if dissatisfied with the IGRC recommendation, the inmate may appeal it to the Superintendent of the facility within seven calendar days after receipt of the IGRC's written response; and (3) if dissatisfied with the Superintendent's response, the inmate may appeal the decision to the Central Office Review Committee ("CORC") within seven calendar days after receipt of the Superintendent's written response.  (*Id*. at   18.)  The inmate grievance program was operational at Clinton Correctional Facility ("Clinton") and Great Meadow in 2015.  (*Id.*)

12.     Plaintiff filed a grievance on November 24, 2015, which he labelled as a "Medical Misconduct Grievance."  (*Id.* at   19.)  The action he requested was "to stop depriving [him] of adequate medical attention . . . to cease and desist at once from depriving [him] of the pain medication duly prescribed . . . on 11/12 [and] to send [him] to see a back specialist."  (*Id.*) In the grievance, Plaintiff briefly described an assault by staff to provide context as to how he needed more pain medication.  (*Id.*)  This grievance was assigned the number CL-68136-15.  (*Id.*)

13.     On December 31, 2015, grievance CL-68136-15 was denied.  (*Id.* at   20.)  Plaintiff appealed the decision, and his entire appeal statement consisted of the following: "The decision is replete with false simulated facts and deliberate indifference to my well being.  The IG can investigate the facts.  My sick call request for medical care have all been denied.  Months later–nothing has

5

changed." (*Id.*)

14.    On April 27, 2016, "upon the recommendation of the Division of Health

Services," CORC accepted the grievance "only to the extent that CORC [upheld]

the determination of the Superintendent for the reasons stated." (*Id. at* 21.)

15.    On February 3, 2016, Plaintiff sent a letter to Acting Commissioner Annucci

asking him to personally review thirteen purported grievances. (*Id.* at 22.) One

of the documents included in the letter was dated November 30, 2015. (*Id.*) The

document alleges assault by staff on November 11, 2015, and requests that the

matter be reported to the Inspector General, that he not be returned to Great

Meadow, that he be placed in protective custody, and that he see an outside

doctor. (*Id.*)

16.    On February 8, 2016, the former IGP Director, Karen Bellamy, responded to

Plaintiff's letter on behalf of the Commissioner's Office, informing Plaintiff,

among other things, that "Directive # 4040 makes no provision for an inmate to

refer grievances directly to Central Office. . . ." (*Id*. at 23.)

17.    Plaintiff claimed at his deposition that "another [grievance] specifically about this

assault got purged from the grievance . . . they threw it in the trash and they

shredded it and they did something with it." (*Id.* at 24.) At the same time,

Plaintiff claimed to believe that the response to his medical grievance also applied

to the purportedly destroyed assault grievance. (*Id.*)

18.    DOCCS records show that Plaintiff filed an additional grievance requesting more

pain medication on November 5, 2015, which was denied. (*Id.* at 27.)

6

19.     Following the use of force on November 11, 2015, Defendant Grimaldi issued

Plaintiff a misbehavior report charging him with the following disciplinary

infractions: violent conduct, assault on staff, refusing direct order, and movement

regulation violation.  (*Id.* at   28.)

Familiarity with the remaining undisputed material facts of this action, as well as the

disputed material facts is assumed in this Decision and Order, which (again) is intended

primarily for review by the parties.  (*Id.*)

C.     **Parties' Briefing on Defendants' Motion for Summary Judgment**

Generally, in support of their motion for summary judgment, Defendants assert the

following five arguments: (1) Plaintiff failed to exhaust his administrative remedies with regard

to his claims of excessive force and conspiracy because (a) he did not exhaust the grievance

process for his claims of excessive force and conspiracy by (i) not requesting relief due to the

alleged use of excessive force on November 11, 2015, and subsequent conspiracy; (ii) even

assuming Plaintiff filed a grievance regarding the alleged use of excessive force on November

11, 2015, and subsequent conspiracy, he failed to raise the issues on appeal; and (iii) the inmate

grievance program was available to Plaintiff at Great Meadow and Clinton and conformed to the

minimum standards of New York State Corrections Law Section 139; (2) Plaintiff failed to

exhaust his administrative remedies with regard to his claim of deliberate medical indifference

against Defendant Brunelle because he makes no mention of her use-of-force examination of

him, or the alleged conspiracy among Defendant Brunelle and the other Defendants; (3) in any

event, there is no material of question of fact that Defendant Brunelle was not deliberately

indifferent to Plaintiff's serious medical condition on the grounds that (a) prison officials have

broad discretion in determining the nature and character of medical treatment afforded to inmates and the question of whether an X-ray or additional diagnostic techniques or form of treatment is a classic example of a matter for medical judgment, (b) Plaintiff's broken ribs do not qualify as a serious medical condition in that delay in treatment by one day did not increase the pain he suffered thereafter, and (c) Defendant Brunelle did not exhibit deliberate indifference nor did she act recklessly in that she dutifully recorded Plaintiff's complained of and observable injuries while also consulting with Dr. Karandy, who has the sole authority to determine whether Plaintiff should be sent to an outside hospital or receive diagnostic tests; (4) in any event, Defendant Brunelle is entitled to qualified immunity with regard to Plaintiff's deliberate medical indifference claim because a reasonable person in her position would not have led a reasonable person to believe he or she was causing Plaintiff extreme or chronic pain in violation of the Eighth Amendment by not recommending admission to an outside hospital, and, even if she had made such a recommendation, Dr. Karandy has the authority to make the decision, not Defendant Brunelle; and (5) Defendant Lachance is entitled to summary judgment because no question of fact exists that he did not see the force used against Plaintiff.  (*See generally* Dkt. No. 49, Attach. 1.)

Generally, in opposition to Defendants' motion, Plaintiff asserts the following three arguments: (1) genuine issues of material fact exist as to whether Plaintiff exhausted his administrative remedies because (a) he exhausted his administrative remedies by submitting a grievance of November 30, 2015, which regarded the excessive use of force and conspiracy claims and which was never logged or given a grievance number, and he was in a Special Housing Unit ("SHU") at the time the grievance was submitted, and thus had no choice but to

place his grievance in a sealed envelope in a locked mailbox or locked deposit box for delivery, (b) notwithstanding Plaintiff's first argument, he nevertheless exhausted his administrative remedies regarding the excessive force claims in the CL-6813-15 grievance because he mentioned the excessive force of November 11, 2015, in the grievance itself, and (c) Plaintiff exhausted his administrative remedies with respect to the deliberate medical indifference claim because his deprivation of adequate medical attention before he was sent back to Clinton can only refer to the treatment for injuries suffered during the assault, of which treatment for the use of force evaluation was a part; (2) genuine issues of material fact exist as to Plaintiff's deliberate medical indifference claim in that (a) he suffered an objectively serious injury (broken ribs) to which Defendant Brunelle responded with deliberate medical indifference by failing to document on which side Plaintiff's pain was located and which ribs were painful, and by failing to determine the location, cause and severity of the rib pain; and (3) Defendant Brunelle is not entitled to qualified immunity because (a) her conduct was a proprietary, not a governmental, function, thereby foreclosing any qualified immunity, and (b) even if the Court were to determine her conduct amounts to a governmental function, her medical exam did not conform to even the most rudimentary standards, and was superficial, incomplete, and potentially fraudulent.  (*See generally* Dkt. No. 54, Attach. 1.)

Generally, in reply to Plaintiff's opposition, Defendants repeat the following three arguments asserted in their memorandum of law: (1) Plaintiff failed to create a material question of fact as to whether he exhausted his administrative remedies regarding any of his claims; (2) Plaintiff failed to create a material question of fact with respect to his deliberate medical indifference claim; and (3) Plaintiff fails to respond to Defendants' argument that Defendant

Lachance was not personally involved in the alleged use of force or conspiracy.  (*See generally* Dkt. No. 57.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255.  In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ.

---

[3]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

P. 56(a), (c), (e).[4]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 56.1 (previously Local Rule 7.1[a][3]) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[5]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local

---

[4]    Among other things, Local Rule 56.1 (previously Local Rule 7.1[a][3]) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 56.1.

[5]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

Rule 7.1(b)(3).[6]  Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

possess facial merit, which has appropriately been characterized as a "modest" burden.  *See*

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined

that the moving party has met its burden to demonstrate entitlement to the relief requested

therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct.

30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL

2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.    Legal Standards Governing PLRA Exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring

suit in federal court must first exhaust their available administrative remedies: "No action shall

be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e.

The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits"

by "afford[ing] corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In this

regard, exhaustion serves two main purposes.  First, it protects "administrative agency authority"

---

[6]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-
0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's
failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a
concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages the disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89. "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, DOCCS has made available a well-established inmate grievance program.  7 N.Y.C.R.R. § 701.7.  Generally, the DOCCS IGP involves the following three-step procedure for the filing of grievances.  7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.

First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[7]  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  A representative of the facility's IGRC has a certain number of days from receipt of the grievance to informally resolve the issue.  If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance and issues a written decision within a certain number of days of the conclusion of the hearing.

---

[7]     The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

13

Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision.  The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.

Third, a grievant may appeal to the CORC within a certain number of days of receipt of the superintendent's written decision.  CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by correction officers or prison employees.  7 N.Y.C.R.R. § 701.8.  In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor.  The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number and sent immediately to the superintendent for review.  Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint in one of three ways: (1) "in-house," (2) by the New York State Office of the Inspector General, or (3) by the New York State Police's Bureau of Criminal Investigation.  An appeal of the adverse decision of the superintendent may be taken to CORC as in the regular grievance procedure.  A similar special procedure is provided for claims of discrimination against an inmate.  7 N.Y.C.R.R. § 701.9.

These procedural requirements contain several safeguards.  For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on

mitigating circumstances.  If that application was denied, the inmate could file a complaint

complaining that the application was wrongfully denied.[8]  Moreover, any failure by the IGRC or

the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and

must–be appealed to the next level, including CORC, to complete the grievance process.[9]

It is important to note that, where an inmate does not know that an unprocessed grievance

(i.e., a grievance that has not been assigned a grievance number) may technically be appealed, he

need not appeal that unprocessed grievance, because the regulatory scheme advising him of that

right is too opaque.  *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 126 (2d Cir. 2016)

(finding that, "even if Williams technically could have appealed his [unprocesseed] grievance,

we conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so

confusing that . . . no reasonable prisoner can use [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850

(2016)]").

Generally, if a prisoner has failed to properly follow each of the required three steps of

the above-described grievance procedure prior to commencing litigation, he has failed to exhaust

his administrative remedies, and his claims are subject to dismissal.  *Woodford*, 548 U.S. at 93;

*Porter*, 534 U.S. at 524; *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

However, a plaintiff's failure to exhaust does not end the inquiry.  This is because certain

exceptions exist to the exhaustion requirement.

---

[8]     *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March
31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug.
4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*,
No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

[9]     7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed
to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases]; *cf.* 7
N.Y.C.R.R. § 701.8(g) ("If the superintendent fails to respond within the required 25 calendar
day time limit the grievant may appeal his/her grievance to CORC.").

In particularly, in 2004, in *Hemphill v. State of New York*, the Second Circuit held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

However, in 2016, in *Ross v. Blake*, the Supreme Court abrogated *Hemphill*'s third prong and effectively enveloped its second prong within its first prong. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). More specifically, under *Ross*, any inquiry that previously would have been considered under the second or third prongs of *Hemphill* is now considered entirely within the context of whether administrative remedies were actually available to the aggrieved inmate. *Ross*, 136 S. Ct. at 1858. This is because, the Supreme Court explained, the PLRA "contains its own, textual exception to mandatory exhaustion." *Id*. In particular, 42 U.S.C. § 1997e(a)

provides that only those administrative remedies that "are available" must first be exhausted.  *Id*. In the PLRA context, the Supreme Court determined that "availability" means that "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of."  *Id*. at 1859 (quotation marks omitted).

To guide courts in this new analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available."  *Ross*, 136 S. Ct. at 1859.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*.  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  *Id*.  Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id*. at 1860.

Finally, two additional points bear mentioning regarding an exhaustion hearing.  First, the Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather, PLRA exhaustion is a matter of judicial administration.  *Messa v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).  Second, given that non-exhaustion is an affirmative defense, the defendant bears the burden of proving that a prisoner has failed to exhaust his available administrative remedies.[10]  However, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those

---

[10]    *Murray v. Palmer,* 2010 WL 1235591, at *4 (citation omitted).

17

administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the Court of either exhaustion or unavailability.[11]  As a result, practically speaking, while the burden of proving this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it.

## III.   ANALYSIS

### A.   Whether Plaintiff Failed to Exhaust His Administrative Remedies

After careful consideration, the Court answers the question in the affirmative in part for the reasons stated in Defendants' memoranda of law (Dkt. No. 49, Attach 1; Dkt. No. 57), and negative in part for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 54, Attach. 1.)  To those reasons, the Court adds the following analysis.

#### 1.   Plaintiff's Excessive Force and Conspiracy Claims

Plaintiff has produced a grievance, dated November 30, 2015, alleging he was attacked by corrections officers at Great Meadow.  (Dkt. No. 54, Attach. 4.)  In Defendants' view, even if Plaintiff filed the grievance of November 30, 2015, he nevertheless failed to exhaust his administrative remedies because he failed to raise the issue on appeal.  (Dkt. No. 49, Attach. 1, at 12-13; Dkt. No. 57, at 2.)  The Court finds Defendants' argument unavailing.

Although it is undisputed that Plaintiff failed to appeal his claims of excessive force and conspiracy to CORC, the grievance of November 30, 2015, was not assigned a grievance number in accordance with N.Y.C.R.R. § 701.5(a)(2).  (Dkt. No. 54, Attach. 4.)  Interpreting all

---

[11]    *Murray v. Palmer,* 2010 WL 1235591, at *4 & n.17 [citing cases]; *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, . . . justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

reasonable inferences in favor of the nonmoving party (Plaintiff), the Court finds, for the purpose of this motion, that Plaintiff's grievance of November 30, 2015, was "unprocessed."[12] *See Williams*, 829 F.3d at 126 (finding that, "even if Williams technically could have appealed his [unprocesseed] grievance, we conclude that the regulatory scheme providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016)]"). Furthermore, where an inmate does not know that an unprocessed grievance may technically be appealed, he need not appeal that unprocessed grievance. *Id.* Because Defendants have failed to establish that Plaintiff was aware that his grievance was unprocessed, or that an unprocessed grievance can technically be appealed, and because they retain the burden to show Plaintiff failed to exhaust his administrative remedies, the Court concludes that there is a triable issue of fact as to whether Plaintiff needed to appeal the unprocessed grievance.

The Court also disagrees with Defendants' argument that Plaintiff's mere inquiry into the status of a grievance triggered his duty to exhaust an unprocessed grievance. On December 11, 2015, Plaintiff wrote a letter, which included a copy of the grievance of November 30, 2015, in addition to other grievances, to Commissioner Annuci claiming that his efforts to have his grievances addressed had been unsuccessful. (Dkt. No. 49, Attach. 10.) Ms. Karen Bellamy, Director of the IGP, responded to Plaintiff, identifying four grievances (including grievance CL-68137-15 "alleging assault at Great Meadow") that had been forwarded to CORC, and advising him that specific grievance concerns should be directed to the IGP supervisor. (Dkt. No. 49,

---

[12] The Court is certainly aware that Plaintiff could have written the grievance after the twenty-one-day window and claimed that it was somehow lost or never filed. N.Y.C.R.R. § 701.5(a)(1). However, this possibility merely raises a triable issue of fact as to whether the November 30, 2015, grievance was created for purposes of this litigation and back-dated, or if it is indeed an unprocessed grievance.

Attach. 11.)  Because multiple grievances (including the grievance of November 30, 2015)

described the alleged assault at Great Meadow, this response raises a triable question of fact as to

whether the grievance identified by Ms. Bellamy (i.e., grievance number CL-68137-15) was

Plaintiff's grievance of November 30, 2015.  There is also a triable issue of fact as to Plaintiff's

interpretation of this letter, in particular, whether Plaintiff reasonably believed, based on the

language of the letter, that his grievance of November 30, 2015, had been processed properly.

(Dkt. No. 49, Attach. 11.)

The Court notes, however, that it rejects Plaintiff's alternative argument, i.e., that he

exhausted his administrative remedies with regard to his excessive force and failure to intervene

claims through Grievance CL-68136-15.  Plaintiff labelled Grievance CL-68136-15 as a

"Medical Misconduct Grievance," and, contrary to his own argument, clearly referenced the

alleged assault in it only to provide context for his allegations underlying his medical-

misconduct grievance.  (Dkt. No. 54, Attach. 7.)  Granted, "[a]ll that is necessary is that the

grievance contain a 'concise, specific description of the problem.'"  *Bailey v. Weckesser*, 18-CV-

6292, 2020 WL 1333451, at *6 (W.D.N.Y. Mar. 23, 2020) (citing *Valera v. Demmon*, 491 F.

Supp. 2d 442, 449 [S.D.N.Y. 2007]).  However, in this case, Grievance CL-68136-15 described

only issues with Plaintiff's medical care; it did not describe a problem with the force used

against him (and subsequently agreement between Defendants regarding that use of force).  (Dkt.

No. 54, Attach. 7.)

For all of these reasons, the Court must deny Defendants' request for a judgment as a

matter of law on their exhaustion defense with respect to Plaintiff's excessive force and

conspiracy claims.  These issues are more appropriate for a pre-trial exhaustion hearing.

Granted, the fact finder of the issues at such a hearing will be the undersigned (who is also authoring this decision). *See, supra,* Part II.B. of this Decision and Order. However, those issues will be decided based only on a preponderance of the evidence (rather than a beyond-a-reasonable-dispute standard). The parties are respectfully advised that of particular interest to the Court at such a hearing (if the parties do not settle their dispute in the interim) would be the outstanding factual and legal issues identified above in this Decision and Order, including, but not limited to, the following: (1) pursuant to Clinton's IGP procedure on November 30, 2015, how grievances from SHU inmates and are assigned grievance numbers, (2) the facts underlying grievance number CL-68137-15, and how they differ from the facts underlying the grievance of November 30, 2015, (3) testimony explaining the lack of receipt of that grievance by the Clinton IGP on or after November 30, 2015, the receipt of that grievance by Ms. Bellamy between February 3, 2016, and February 8, 2016, and as well as subsequent actions (if any) that were taken, and (4) Plaintiff's interpretation of Ms. Bellamy's letter of February 8, 2016.

### 2. Plaintiff's Deliberate Medical Indifference Claim

Turning to Plaintiff's belated claim of deliberate medical indifference by the Officer Defendants, he argues that the sentence in his grievance of November 30, 2015, alleging that "I was thereafter threatened, starved & deprived of adequate medical attention, & sent to Clinton . . ." sufficiently demonstrates that he exhausted his administrative remedies with respect to his deliberate medical indifference claim against the Officer Defendants.[13] (Dkt. No. 54, Attach. 4.)

---

[13] Noticeably, Plaintiff's argument relies on this single sentence in the grievance of November 30, 2015; he fails to identify any other evidence to support his position that the Officer Defendants were deliberately medically indifferent to Plaintiff's needs. (Dkt. No. 54, Attach. 1, at 19-20.) However, this lone sentence fails to identify what medical indifference the Officer Defendants subjected Plaintiff to or how they were deliberately indifferent to his medical needs. Accordingly, even if the Court were to consider Plaintiff's argument, it would find that

The Court notes that, even when construed with the utmost of special liberality, Plaintiff's

Amended Complaint fails to claim that the *Officer Defendants* engaged in deliberate medical

indifference, and accordingly disregards this argument in its entirety.  *See Lyman v. CSX Tramp.,*

*Inc.*, 364 F. App'x 699, at *2 (2d Cir. 2010) (disregarding plaintiff's argument that was raised

for the first time in his opposition to summary judgment memorandum); *Greenidge v. Allstate*

*Ins. Co.*, 446 F.3d 356, 361 (2d Cir. 2006) (declining to reach merits of argument raised for first

time in opposition to summary judgment).

      With regard to Plaintiff's claims against *Defendant Brunelle*, Grievance CL-68136-15

does not contain any mention of the use-of-force examination she conducted.  Instead, Grievance

CL-68136-15 concerns Plaintiff's treatment, or lack thereof, by Dr. Adams for discontinuing his

pain medication and providing deliberately indifferent medical care to the serious injuries he

suffered from the use of force on November 11, 2015.  (Dkt. No. 54, Attach. 7, at 1-2.)

Although Plaintiff need not identify Defendant Brunelle by name, he must nevertheless indicate

that he is grieving the use-of-force examination.  *See Wilson v. Caberra*, 19-CV-1294, 2017 WL

9511094, at *14 (N.D.N.Y. Dec. 13, 2017) (Baxter, M.J.) *report rec. adopted in entirety*, 2020

WL 4673941, at *1 (Hurd, J.) ("It is well-settled that a plaintiff does not have to name all the

defendants in his grievance in order to exhaust his administrative remedies."); *Luckerson v.*

*Gooard*, 00-CV-9508, 2002 WL 1628550, at *2 (S.D.N.Y. July 22, 2002) (determining that

requiring defendants to litigate a federal lawsuit premised on allegations that they had no reason

to address in the IGRC "would make a mockery of the exhaustion requirement."); *Turner v.*

*Goord*, 376, F. Supp. 2d 321, 424 (W.D.N.Y. 2005) ("[T]he mere fact that plaintiff filed some

the argument is conclusory, and that the Officer Defendants are entitled to summary judgment on
Plaintiff's deliberate medical indifference claim.

22

grievance, and fully appealed all the decisions on that grievance, does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance."). Because Plaintiff's grievance did not describe the alleged problem with Defendant Brunelle's use-of-force examination of him, he has failed to exhaust his administrative remedies for his deliberate indifference claim against her.[14]

For all of these reasons, the Court finds that Plaintiff's claims of excessive force and conspiracy survive Defendants' motion for summary judgment, but that his deliberate medical indifference claim against Defendant Brunelle must be dismissed for failure to exhaust his administrative remedies.

> A.     Whether Plaintiff Has Created a Genuine Dispute of a Material Fact Concerning His Claims Against Defendant Lachance

After carefully considering the matter, the Court finds that Defendant Lachance has met his lightened burden on his unopposed motion. *See, supra*, Part II of this Decision and Order. More specifically, the Court finds, for the reasons stated in Defendants' memorandum of law, that Defendant Lachance has demonstrated entitlement to the relief requested by presenting arguments that are, at the very least, facially meritorious. *See, supra,* Part I.B. of this Decision and Order. The Court notes that, even if it were to subject Defendant Lachance's arguments to the more-rigorous scrutiny appropriate for a contested motion, the Court would accept those arguments. For all of these reasons, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's claims against Defendant Lachance.

**ACCORDINGLY**, it is

---

[14]     Because the Court has determined that Plaintiff has failed to properly exhaust his administrative remedies with regard to his deliberate medical indifference claim, it need not, and does not, analyze whether there is a genuine issue of material fact as to the merits of that claim, or whether Defendant Brunelle is entitled to qualified immunity on that claim.

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 49) is

**GRANTED** **in part and** **DENIED** **in part**; and it is further

**ORDERED** that the following claims are **DISMISSED**:

(1) Plaintiff's Third Claim (for deliberate medical indifference) against Defendant

Brunelle;

(2) Plaintiff's First and Second Claims (for excessive force and conspiracy) against

Defendant Lachance; and it is further

**ORDERED** that **SURVIVING** Defendants' motion for summary judgment are the

following claims for an exhaustion hearing:

(1) Plaintiff's First Claim (for excessive force) against Defendants Grimaldi, Gordon,

Ross, Hanson, Lyons, Reynolds, and John Does 1-13;

(2) Plaintiff's Second Claim (for conspiracy) against Defendants Grimaldi, Gordon,

Ross, Hanson, Lyons, Reynolds, Brunelle, and John Does 1-13; and it is further

**ORDERED** that the undersigned's Courtroom Deputy, Shelly Muller (315) 234-8583,

shall contact the parties to schedule a prompt exhaustion hearing and pre-trial conference in this

action with the undersigned, at which counsel shall appear with settlement authority.


Dated: August 25,  2021
       Syracuse, New York


Hon. Glenn T. Suddaby
Chief U.S. District Judge

24