UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TYSON POULOS,

                              Plaintiff,

v.                                                          9:18-CV-1279
                                                            (GTS/ML)

STEVEN GRIMALDI; "JOHN" GORDON; MARK
ROSS, SR.; RONALD HANSON; MICHAEL LYONS, JR.;
DANIEL REYNOLDS; and REBECCA BRUNELLE,

                              Defendants.

_____

APPEARANCES:                          OF COUNSEL:

HELD & HINES LAW LLP                  PHILIP M. HINES, ESQ.
   Counsel for Plaintiff
2004 Ralph Avenue
Brooklyn, NY 11234

LAW OFFICE OF JACK ANGELOU            JACK D. ANGELOU, ESQ.
   Co-Counsel for Plaintiff
145 Willis Avenue, 2nd Floor
Mineola, NY 11501

HON. LETITIA A. JAMES                 CHRISTOPHER LIBERATI-CONTANT, ESQ.
Attorney General for New York         Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 14202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Tyson Poulos ("Plaintiff")

against the seven above-captioned individuals ("Defendants"), is the question of whether, before

he filed this action on October 31, 2018, Plaintiff had exhausted his administrative remedies

under the Prison Litigation Reform Act ("PRLA"), which was raised as an affirmative defense by

Defendants in their Answer to Plaintiff's Amended Complaint.  (Dkt. No. 17.)  The Court

conducted an evidentiary hearing on the issue on November 19, 2021.  (Dkt. No. 77.)  At the

hearing, documentary evidence was admitted, and testimony was taken of Plaintiff as well as

Defendants' two witnesses (Rachael Seguin, Assistant Director of the New York State

Department of Corrections and Community Supervision Inmate Grievance Program, and

Christine Gregory, Clinton Correctional Facility Inmate Grievance Program Supervisor), whom

Plaintiff was able to cross-examine through counsel.  At the conclusion of the hearing, the

undersigned indicated that a written decision would follow.  This is that written decision.  For the

reasons stated below, the Court finds that Plaintiff's Amended Complaint survives Defendants'

affirmative defense of failure to exhaust his administrative remedies.

I.      **RELEVANT BACKGROUND**

   A.      **Relevant Procedural History**

   In its Decision and Order of August 25, 2021, the Court denied Defendants' request for a

judgment as a matter of law on their exhaustion defense with respect to Plaintiff's excessive force

and conspiracy claims, finding that the resolution of those issues would be more appropriate for a

pre-trial exhaustion hearing.  (Dkt. No. 59, at 18-23.)[1]  The Court then respectfully advised the

parties that the issues of particular interest to the Court at such a hearing would include, but not

be limited to, the following: (1) pursuant to the Inmate Grievance Program ("IGP") procedure at

---

[1]      However, the Court dismissed Plaintiff's deliberate medical indifference claim
against Defendant Brunelle (arising from her use-of-force examination of him) for failure to
exhaust his administrative remedies.

Clinton Correctional Facility ("C.F.") on November 30, 2015, how grievances from Special

Housing Unit ("SHU") inmates are assigned grievance numbers, (2) the facts underlying

grievance number CL-68137-15, and how they differ from the facts underlying the grievance of

November 30, 2015, (3) testimony explaining the lack of receipt of that grievance by the Clinton

C.F. IGP on or after November 30, 2015, the receipt of that grievance by Ms. Bellamy between

February 3, 2016, and February 8, 2016, and subsequent actions (if any) that were taken, and (4)

Plaintiff's interpretation of Ms. Bellamy's letter of February 8, 2016.

### B.    Factual Findings

Generally, the Court's factual findings at the exhaustion hearing are consistent with those

rendered in its Decision and Order of August 25, 2021, granting in part and denying in part

Defendants' motion for summary judgment.  For the sake of brevity, the Court will focus on only

those factual findings most relevant to the issue of exhaustion, as presented by the parties at the

exhaustion hearing.[2]

Based on the evidence adduced at the hearing in this action, the Court renders the

following factual findings.

1.    At one or two times between November 18, 2015, and November 30, 2015, while

---

[2]    The Court notes that Plaintiff places some reliance on Karen Bellamy's letter of
February 8, 2016, which erroneously stated that the New York State Department of Corrections
and Community Supervision had filed a grievance from him "alleging assault at Great Meadow
Correctional Facility" and had assigned to it grievance number "CL-68137-15," when in fact that
grievance regarded not an assault but sexual harassment by a doctor.  (*See, e.g.,* Hrg. Ex. D-6;
Hrg. Tr. at 47, at 25-27, 31, 34, 70, 80, 95.)  However, setting aside the fact that any purported
detrimental reliance by Plaintiff on this erroneous statement occurred after February 8, 2016
(long after the expiration of the deadline by which to appeal to the Central Office Review
Committee from a non-response to a grievance), this erroneous statement by Ms. Bellamy is of
little relevance, given that Plaintiff's actual grievance was never assigned a number.

he was in the SHU at Clinton C.F., Plaintiff submitted to a corrections officer for delivery to the Grievance Clerk at Clinton C.F. a written complaint alleging that on November 11, 2015, at Great Meadow C.F., he was brutally attacked without provocation by a group of uniformed corrections officers.  (*See, e.g.,* Hrg. Ex. P-6, at 1-3; Hrg. Ex. D-5, at 3; Hrg. Tr. at 47, 58-65, 68-69, 77-79, 81. 90.)

2.    Subsequently, no such complaint was ever "processed" or assigned a grievance number.  (*See, e.g.,* Hrg. Ex. P-6, at 3; Hrg. Ex. D-5, at 3; Hrg. Tr. at 47, 57, 68-70.)

3.    Plaintiff never sought to appeal the unprocessed grievance to either the Superintendent of Clinton C.F. or the Central Office Review Committee ("CORC"), pursuant to either 7 N.Y.C.R.R. § 701.6(g) ("Absent [an] exception, matters not decided within the time limits may be appealed to the next step.") or 7 N.Y.C.R.R. § 701.8(g)(2) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").  (*See, e.g.,* Hrg. Ex. P-6, at 3; Hrg. Ex. D-5, at 3; Hrg. Tr. at 48, 68-70.)

## II.    GOVERNING LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") expressly provides that "[n]o action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.[3]  "[T]he PLRA's exhaustion requirement applies to all inmate

---

[3]    The purpose of this provision was "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516,

suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In the event a defendant establishes that the inmate-plaintiff failed to fully comply with the administrative process prior to commencing an action in federal court, the plaintiff's complaint is subject to dismissal. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. . . . [W]e are persuaded that the PLRA exhaustion requirement requires proper exhaustion.").[4]

In accordance with the PLRA, the New York State Department of Corrections and Community Supervision ("DOCCS") has instituted a grievance procedure, designated as the Inmate Grievance Program ("IGP"), for use by prison inmates to lodge complaints regarding the conditions of their confinement. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 119 (2d Cir. 2016). Generally, the IGP is comprised of three steps that inmates must satisfy when they have a

---

524-25 (2002). In this regard, the exhaustion requirement serves two main purposes. First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89.

[4]      *See also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) ("Regardless of whether his tort claims or informal complaints put the prison officials on notice of his grievance in a *substantive* sense, . . . to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies.") (internal quotation marks and citation omitted; emphasis in original).

grievance regarding prison conditions. 7 N.Y.C.R.R. §§ 701.1, 701.5; *Williams*, 829 F.3d at 119.

First, an inmate must file a complaint or "grievance" with the facility's IGP "clerk" within twenty-one (21) calendar days of the alleged occurrence giving rise to his or her complaint.   7 N.Y.C.R.R. § 701.5(a)(1).  If a grievance form is not readily available, a complaint may be submitted on plain paper.  *Id*.  The grievance may be filed only at the facility where the inmate is housed, even if it pertains to another facility.  *Id*.  The representatives of the facility's inmate grievance resolution committee ("IGRC") have sixteen (16) calendar days from receipt of the grievance to informally resolve the issue.  *Id*. at § 701.5(b)(1).  If there is no such informal resolution, then the full IGRC conducts a hearing within sixteen (16) calendar days of the receipt of the grievance, and issues a written decision within sixteen (16) calendar days of the conclusion of the hearing.  *Id*. at § 701.5(b)(2).

Second, a grievant may appeal the IGRC's decision to the facility's superintendent within seven (7) calendar days of receipt of the IGRC's written decision.  *Id*. at § 701.5(c)(1).  The superintendent must issue a written decision within a certain number of days of receipt of the grievant's appeal.  *Id*. at § 701.5(c)(3)(i), (ii).[5]

Third, a grievant may appeal to DOCCS' Central Office Review Committee ("CORC") within seven (7) calendar days of receipt of the superintendent's written decision.  *Id*. at § 701.5(d)(1)(i).  CORC is to render a written decision within thirty (30) calendar days of receipt of the appeal.  *Id*. at § 701.5(d)(2)(i), (ii).

Moreover, there is an expedited procedure for the review of complaints of employee

_____

[5]     Depending on the type of matter complained of by the inmate, the superintendent has either seven (7) or twenty (20) calendar days after receipt of the appeal to issue a decision. 7 N.Y.C.R.R. § 701.5(c)(3)(i), (ii).

harassment.  7 N.Y.C.R.R. § 701.8.  Pursuant to this expedited procedure, all grievances of employee harassment are sent directly to the superintendent, bypassing IGRC review.  *Id*. at § 701.8(b), (c).   The superintendent then has twenty-five (25) days from the date of the grievance's receipt to render a decision.  *Id*. at § 701.8(g).  An inmate may appeal the superintendent's decision to the CORC within seven (7) days of its receipt.  *Id*. at § 701.8(h).

These procedural requirements contain several safeguards.  For example, if an inmate could not file such a grievance within the required time period after the alleged occurrence, he or she can apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances.  *Id*. at § 701.6(g)(1)(i).  If that application is denied, the inmate can file a grievance complaining that the application was wrongfully denied.  *Id*. at § 701.6(g)(1)(ii).  Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next step, including CORC, to complete the grievance process.  *See id.* at § 701.6(g)(2) ("Absent [an] exception, matters not decided within the time limits may be appealed to the next step."); *id*. at § 701.8(g)(2) ("If the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC.").

It is important to note that, where an inmate does not know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed to the next step (i.e., pursuant to § 701.6[g][2] and/or 701.8[g][2]), he need not appeal that unprocessed grievance because the regulatory scheme advising him of that right is too "opaque." *See Williams*, 829 F.3d at 126 (finding that, "even if Williams technically could have appealed his [unprocessed and thus unnumbered] grievance, we conclude that the regulatory scheme

7

providing for that appeal is 'so opaque' and 'so confusing that . . . no reasonable prisoner can use

[it pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016)]'").

Generally, if a prisoner has failed to properly follow each of the required three steps of

the above-described grievance procedure prior to commencing litigation, he has failed to exhaust

his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93;

*Porter*, 534 U.S. at 524; *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

However, a failure to exhaust does not require dismissal if the failure qualifies for one of a

limited number of exceptions to the exhaustion requirement.

Specifically, the Supreme Court has identified three kinds of circumstances in which an

administrative remedy, "although officially on the books," is not "available." *Ross v. Blake*, 136

S. Ct. 1850, 1859 (2016). First, "an administrative procedure is unavailable when (despite what

regulations or guidance materials may promise) it operates as a simple dead end–with officers

unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S. Ct. at

1859. Second, "an administrative scheme might be so opaque that it becomes, practically

speaking, incapable of use." *Id*. Third, an administrative remedy is not "available" when "prison

administrators thwart inmates from taking advantage of a grievance process through machination,

misrepresentation, or intimidation." *Id*. at 1860.

Finally, two additional points bear mentioning regarding exhaustion hearings. First, the

Second Circuit has ruled that a plaintiff in a lawsuit governed by the PLRA is not entitled to a

jury trial on disputed factual issues relating to his exhaustion of administrative remedies; rather,

PLRA exhaustion is a matter of judicial administration. *Messa v. Goord*, 652 F.3d 305, 308-10

(2d Cir. 2011). Second, given that non-exhaustion is an affirmative defense, the defendant bears

the burden of proving that a prisoner has failed to exhaust his available administrative remedies. *Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *4 (N.D.N.Y. Mar. 21, 2010) (Suddaby, J.). However, while the ultimate burden of proof always remains with the defendant, the burden of production may shift to the plaintiff to demonstrate unavailability of the grievance process. *Woodward v. Lytle*, 16-CV-1174, 2019 WL 2527342, at *4 (N.D.N.Y. May 24, 2019) (Peebles, M.J.). For example, once a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then "counter" the defendant's assertion by persuading the court of either exhaustion or unavailability. *Murray,* 2010 WL 1235591, at *4 & n.17 (citing cases).[6]

## III.   ANALYSIS

The Court begins its analysis by repeating a point of law set forth above in Part II of this Decision and Order: where an inmate does not know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed to the next step (i.e., pursuant to 7 N.Y.C.R.R. §§ 701.6[g][2] and/or 701.8[g][2]), he need not appeal that unprocessed grievance because the regulatory scheme advising him of that right is too "opaque." *See Williams*, 829 F.3d at 126  (finding that, "even if Williams technically could have appealed his [unprocesseed] grievance, we conclude that the regulatory scheme providing for that appeal is

_____

[6]       *See also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004) (noting that special circumstances must be "plausibly alleged, . . . justify[ing] the prisoner's failure to comply with administrative procedural requirements"); *Grant v. Kopp*, 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019) (Peebles, M.J.) ("I conclude that[,] although the burden of proof on this affirmative defense remains with the defendant at all times, the plaintiff can be required to produce evidence in order to defeat it.") (citing cases), *adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) (Sharpe, J.).

'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it pursuant to *Ross v. Blake*, 136 S. Ct. 1850 (2016)]'").

Granted, it is conceivable that, where an inmate *does* know that an unprocessed grievance (i.e., a grievance that has not been assigned a grievance number) may technically be appealed to the next step (i.e., pursuant to §§ 701.6[g][2] and/or 701.8[g][2]), the regulatory scheme may be sufficiently transparent (pursuant to *Williams*) to still be available him. *See, e.g., Reynolds v. Stone*, 20-CV-0696, 2021 WL 3271805, at *11 (N.D.N.Y. May 24, 2021) (Lovric, M.J.) ("*Williams* and its progeny are inapposite here, however, because the undisputed evidence shows that Plaintiff was familiar with the prison's grievance procedures."), *adopted*, 2021 WL 3269053 (N.D.N.Y. July 30, 2021) (McAvoy, J.); *cf. Rodriguez v. Reppert*, 14-CV-0671, 2016 WL 6993383, at *2 (W.D.N.Y. Nov. 30, 2016) ("To be sure, an inmate's subjective understanding of the grievance procedure is one aspect of the opaqueness question . . . .").  However, Defendants did not adduce evidence that Plaintiff knew, during the time in question, that an unprocessed grievance may technically be appealed to the next step pursuant to §§ 701.6(g)(2) and/or 701.8(g)(2).  (*See generally* Hrg. Tr.)  *See, e.g., Reid v. Marzano*, 15-CV-0761, 2017 WL 1040420, at *3 (N.D.N.Y. Mar. 17, 2017) (D'Agostino, J.) ("Defendants did not put forth any evidence demonstrating that Plaintiff received information about how to pursue administrative remedies when a grievance is unfiled and unanswered.").

Furthermore, a more-persuasive interpretation of *Williams* is that such knowledge does not affect the opaqueness question.  *See Zulu v. Barnhart*, 16-CV-1408, 2019 WL 2997226, at *13 (N.D.N.Y. Apr. 22, 2019) (Peebles, M.J.) ("Although plaintiff had a well-developed understanding of the grievance process, *his familiarity with the standard IGP regulations could*

*hardly make his situation less 'opaque'* or render administrative remedies somehow more available to him. . . .  If anything, plaintiff's understanding of how the IGP process functions in the ordinary course bolsters his claim that the usual process did not unfold in this circumstance by suggesting that the filing failure did not result from plaintiff's own ineptitude. There is no evidence in the record that the absence of any grievances at Marcy [C.F.] regarding the incident is attributable to plaintiff . . . .") (emphasis added); *Rodriguez*, 2016 WL 6993383, at *2 ("Nothing in *Williams*, however, suggests that the opaqueness exception is categorically unavailable simply because, as here, the prisoner was familiar with his prison's grievance process."). This is because the opaqueness question is generally viewed as objective rather than subjective in nature.  *See, e.g., Rodriguez*, 2016 WL 6993383, at *2 ("[T]he [opaqueness] question, according to the Second Circuit [in *Williams*], is whether '[t]he regulations . . . contemplate the situation in which [the prisoner] f[inds] himself.' . . . . This is an objective question: the regulations either provide an inmate with a procedural route to obtain administrative relief, or they do not.").

　　For all of these reasons, the Court finds that Defendants have not met their ultimate burden of proving that Plaintiff failed to exhaust his *available* administrative remedies: the written complaint that he submitted for delivery to the Clinton C.F. Grievance Clerk on November 30, 2015, was never assigned a grievance number, and 7 N.Y.C.R.R. §§ 701.6(g)(2) and 701.8(g)(2) were so opaque and confusing that no reasonable prisoner could use them, pursuant to *Williams*.[7]

---

[7]  　　The Court notes that the *Williams* decision (which was issued on July 12, 2016) has been treated as setting forth a rule that is retroactive in nature and thus applies to the DOCCS' administrative scheme in existence during the events giving rise to this action (i.e.,

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) **SURVIVES** Defendants'
affirmative defense of failure to exhaust his administrative remedies; and it is further

**ORDERED** that the undersigned's Courtroom Deputy, Shelly Muller (315) 234-8583,
shall contact the parties to schedule a pre-trial conference in this action with the undersigned, at
which counsel shall appear with settlement authority.

Dated: January 19, 2022
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

November of 2015).  *See, e.g., Hamlett v. Stotler*, 17-CV-0939, 2019 WL 4306999, at *1-2, 9
(N.D.N.Y. Aug. 15, 2019) (Dancks, M.J.) (applying *Williams*' opaqueness exception to a
grievance that was unprocessed at Clinton C.F. in September of 2014).